United States District Court
Southern District of Texas
ENTERED

APR 17 2009

Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
—BROWNSVILLE DIVISION—

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff, | § | |
| | § | Civil Action No. B-08-195 |
| v. | § | Criminal Action No. B-07-076 |
| | § | |
| GABRIEL SALAZAR CARREON | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Gabriel Salazar Carreon's ("Salazar") *pro se* Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Cv. DE 1).[1] In response to Defendant's Motion, the United States' (the "government") has filed a Motion to Dismiss Salazar's 2255 Motion Based on Waiver (Cv. DE 17). Having considered the record, the relevant law, and the parties' submissions, the Court hereby GRANTS the government's Motion, and DISMISSES Salazar's 2255 Motion.

### I.  BACKGROUND

On February 6, 2007, a federal grand jury charged Salazar, along with three others, in a two count indictment with conspiring to possess with intent to distribute approximately five kilograms of cocaine (Count One) in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846, and with possession with intent to deliver the same (Count Two) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2 (Cr. DE 20). Salazar entered into a plea agreement with the government which was executed and filed with the district court on March 27, 2007 (Cr. DE 72). Under the agreement,

---

[1] For purposes of this Order, "(Cv. DE __ )" refers to the docket entry in this Civil Action No. B-08-195, styled *United States of America v. Gabriel Salazar Carreon*, and "(Cr. DE __ )" refers to the docket entry in Petitioner's underlying criminal case, Criminal Action No. B-07-076, styled *United States of America v. Gabriel Salazar Carreon*, also in the Brownsville Division of the United States District Court for the Southern District of Texas.

Salazar agreed to enter a plea of guilty to the possession count (Count Two) in exchange for dismissal of the conspiracy count (Count One), and the government's recommendation that Salazar be given full credit for acceptance of responsibility and be sentenced to the low end of the United States Sentencing Guidelines ("USSG") level he scored (Cr. DE 72 at ¶ 2). Salazar also agreed to waive his right to appeal his sentence and to contest his conviction or sentence by means of any post-conviction proceeding, including but not limited to 28 U.S.C. § 2255 (*Id.* at ¶ 10). The agreement also states that "[t]he parties understand this agreement carries the potential for a motion for departure under [§] 5K1.1 of the Sentence Guidelines[, and Salazar] understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas"[2] (*Id.* at ¶ 8).

On March 27, 2007, the same day the plea agreement was executed, Salazar was rearraigned before this Court. At the rearraignment, Salazar indicated that he understood the agreement and agreed to its terms. *See* Rearr. Hrg. Tr., *passim* (Cr. DE 116). The Court specifically advised Salazar of the provisions waiving his right to appeal the sentence imposed in any manner, and to contest or collaterally attack his conviction pursuant to 28 U.S.C. § 2255, and Salazar indicated that he understood that and agreed to it. *See id.* at 15. A final Pre-Sentence Investigation Report ("PSR") was filed on June 11, 2007, and on the same day Salazar's counsel entered a statement of no objections to that PSR (Cr. DE 84).

---

[2] USSG § 5K1.1 contemplates a motion by the government for a downward departure – i.e., a below guidelines sentence – where a defendant provides "substantial assistance in the investigation or prosecution of another person who has committed an offense." Unless otherwise obligated by the terms of the plea agreement, the government is not required to file such motion, and the sentencing court has discretion to grant or deny the government's motion. *See* USSG § 5K1.1. In this case, the plain language of the plea agreement, "determined solely by the United States," leaves no doubt that the government's decision to move for a § 5K1.1 departure was completely discretionary (Cr. DE 72 at ¶ 8).

Salazar was sentenced on July 24, 2007. At the sentencing hearing, Salazar's counsel first certified to the Court its prior written notice of no objections to the PSR. Salazar's counsel then objected to the government's offer of a one-quarter sentence deduction pursuant to USSG § 5K1.1, instead of a one-third deduction. The Court overruled the objection, but did grant Salazar the one-quarter deduction requested by the government (Cr. DE 111). After granting additional points for acceptance of responsibility and safety-valve eligibility, the Court sentenced Salazar to 43 months imprisonment to be followed by a three-year term of supervised release, which judgment was entered on August 14, 2007 (*Id.*).

On May 28, 2008, Salazar filed the 2255 Motion *sub judice*, claiming that his counsel rendered ineffective assistance by (1) "failing to file written objections to the Pre-Sentence Report," (2) letting the adversarial relationship between defense counsel and prosecutor "lapse into a cooperative process," and (3) failing to argue for any lenience or to object to his client being "saddled with the full responsibility of the charged [o]ffense while others got away scott free" (Cv. DE 1 at 4-7). Salazar asserts these errors caused him to receive a one-quarter sentencing deduction off of his calculated guidelines range under USSG § 5K1.1, instead of the one-third deduction Salazar claims his defense counsel assured him he would receive (*Id.* at 8). The government asserts Salazar waived the right to assert these claims in a written and signed plea agreement, and seeks specific enforcement of those provisions (Cv. DE 17). Salazar concedes that his defense counsel reached an agreement with the government whereby he would waive his right to appeal or collaterally attack his conviction or sentence, but claims that he should not be bound by the terms of his plea agreement because it is "tainted by ineffective assistance of counsel" (Cv. DE 1 at 9, 11). Salazar also prays for an evidentiary hearing on the issues of ineffective assistance and double

jeopardy, because he was "subjected to peril . . . at the pre-change of plea hearing proceedings and then after having changed his plea, and again . . . by the non-jury findings made by the Court and by the submissions of the government to the Probation Department and the Court, which [were] neither proven, questioned nor found to be reliable . . . ." (*Id.* at 15).

Finally, at the end of his 2255 Motion, Salazar recites the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and sets forth some case law on the meaning of equal protection as it pertains to taxation. Salazar, however, never actually states a claim under those authorities, nor any facts which would justify its application to this case. For that reason, the Court will not address any Equal Protection Clause issue, because the Court finds that even under a liberal construction of Salazar's 2255 Motion, no claim under that Clause was made.

## II.   DISCUSSION

### A.   Waiver

To determine whether collateral attack of a sentence is barred by a waiver provision in a plea agreement, federal courts conduct a two-step inquiry: (1) whether the defendant's waiver was knowing and voluntary, and (2) whether the waiver applies to the circumstances at hand, based on the plain language of the agreement. *See United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005). If the record of a Rule 11 hearing "clearly indicates that a defendant has read and understands his plea agreement and the defendant raises no objections regarding the waiver provisions, the defendant will be held to the bargain to which he agreed." *United States v. Portillo*, 18 F.3d 290, 293 (5th Cir. 1994). The court is to give "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002). A defendant's declarations under oath before the court regarding the voluntariness of a waiver of the right to collaterally attack a sentence

under § 2255 carry a "strong presumption of verity." *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)).

As an initial matter, Salazar's plea agreement plainly applies "to the circumstances at hand" because the plea agreement contains an explicit waiver of his right to collaterally attack his sentence or conviction by means of a 2255 Motion, the very pleading Salazar has filed here. Therefore, the only question before the Court is whether Salazar's waiver in that plea agreement was knowing and voluntary. *See Bond*, 414 F.3d at 544.

In his plea agreement, dated June 11, 2008, Defendant waived his right to appeal and to file a § 2255 motion (Cr. DE 14 at ¶ 10). Specifically, paragraph 10 of his plea agreement states:

> Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined **on any grounds set forth in Title 18 U.S.C. § 3742.** Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding, **including but not limited to Title 28, U.S.C. §§ 1651 and 2255.**

(*Id.* at ¶ 10) (emphasis in original). The first page of Salazar's plea packet gives a factual summary of the events leading to his arrest and subsequent indictment. The second page of the plea agreement contains Salazar's signature directly beneath the following two sentences: "I agree the above factual summary accurately represents my involvement in the crime to which I am pleading guilty and that the abbreviated proposed plea agreement accurately describes my plea agreement with the government. A complete written plea agreement may be attached." The last page of the plea agreement contains a paragraph "Certification by the Defendant" which reads:

> I have consulted with my counsel and fully understand all my rights with respect to the charge(s) pending against me. Further I have consulted with my attorney and

> fully understand my rights with respect to the provisions of the Sentencing Guidelines and Policy Statements which may apply in my case. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and I voluntarily agree to it. /s/ Gabriel Salazar-C 3-27-07.

(Cr. DE 54 at 8). In addition, the last page of the plea agreement contains a paragraph "Certification by Attorney" in which Salazar's counsel certified that he fully explained to Salazar his rights with respect to the charges, and reviewed the provisions of the Sentencing Guidelines and Policy Statements with Salazar (*See id.*). Salazar's counsel further certified that he carefully reviewed every part of the plea agreement with Salazar, and that to his knowledge, Salazar's decision to enter into the agreement was an informed and voluntary decision (*See id.*).

Although it appears from the foregoing that Defendant's waiver was knowing and voluntary, the Fifth Circuit has held that "a defendant may always avoid a waiver on the limited grounds that the waiver of appeal itself was tainted by the ineffective assistance of counsel." *United States v. White*, 307 F.3d 336, 339 (5th Cir. 2002). Thus, the Court now proceeds to determine whether in this case Movant asserts the waiver itself, as opposed to some other part of the underlying criminal proceedings, was tainted by ineffective assistance of counsel. *See id.*

The defendant in *White* sought to avoid a waiver of appeal contained in his plea agreement by arguing that his attorney failed to challenge the quantity of drugs used in sentencing him and allowed him to be sentenced under a different statute that the one in the indictment. *See id.* at 337. The Court examined the defendant's *pro se* briefs to determine whether he claimed that the waiver itself was tainted by ineffective assistance of counsel. *See id.* at 339-340. In finding that the defendant "never meant to challenge the validity of his plea," even under a liberal construction of his 2255 Motion, the Fifth Circuit noted that the defendant made the invalid waiver claim only "as

part of his larger argument . . . that his counsel [rendered] ineffectual performance at the sentencing hearing." *Id.* at 340.

The Fifth Circuit then observed that several other circuits distinguished between ineffective assistance affecting the plea agreement and ineffective assistance relating to some other part of the proceedings, and held, in accord with that "wealth of authority,"[3] that a waiver of appeal remains valid if the section 2255 movant argues that he received ineffective assistance of counsel at stages of the proceedings *other than* the plea or waiver itself. *See id.* at 343 (emphasis in original).

One of the key lessons of *White* is that even on review of a *pro se* defendant's 2255 Motion, a court need not take at face value a defendant's claim that his waiver is involuntary due to ineffective assistance. Rather, it may look at the context in which the invalid waiver claim is made, and if for example, the argument truly centers on a claim that counsel erred at sentencing, then a court may still enforce the waiver. *See White*, 307 F.3d at 343 (noting that absent claims that assistance directly affected the validity of the waiver itself "we see no need to except ineffective assistance of counsel claims from the general rule allowing defendants to waive their statutory rights so that they can reach a plea agreement if they wish").

In order to properly apply the foregoing analysis to Salazar, the Court must first review the

---

[3] *See, e.g., United States v. Djelevic*, 161 F.3d 104 (2d Cir. 1998) (noting that "[b]ecause the defendant did not claim that his waiver was unknowing or involuntary, the court characterized his appeal as nothing more than an attempt to challenge the correctness of his sentence . . .[which, if allowed] would permit all challenges to the sentence to be reconstituted as 'ineffective assistance' challenges based on the attorney's failure to obtain the desired result"); *Davila v. United States*, 258 F.3d 448 (6th Cir. 2001) (refusing to void waiver of defendant claiming ineffective assistance at sentencing only); *Jones v. United States*, 167 F.3d 1142 (7th Cir. 1998) (allowing defendant alleging that he received ineffective assistance in the negotiation of the plea agreement itself to overcome a waiver and argue ineffective assistance of counsel in a section 2255 motion); *United States v. Pruitt*, 32 F.3d 431 (9th Cir. 1994) (reiterating that a plea agreement could not waive a claim of ineffective assistance based on allegations of "unprofessional inducement of the defendant to plead guilty or accept a particular plea bargain," but distinguishing the defendant's claims as alleging only ineffective assistance of counsel at the sentencing proceedings); *United States v. Cockerham*, 237 F.3d 1179 (10th Cir. 2001) (holding that defendants were not entitled to section 2255 relief because they did not "call [ ] into question the voluntary and intelligent character of their pleas").

portions of Salazar's 2255 Motion relevant to his waiver. They read as follows:

> Petitioner [sic] herein contends that the defense counsel in this case failed to properly defend his interests at every stage of the criminal proceedings. From the arraignment and preliminary hearings the defense counsel was intent on making this Petitioner plead guilty and accept the responsibility that was not his. He failed to investigate the details and history of the case. He allowed the guilty parties to become government witnesses and blame the entire events on his client without even arguing his client's side. . . .
> The defense counsel was ineffective at sentencing in that he never argued for any leniency or objected to his client being saddled with the full responsibility of the charged [o]ffense while others got away scott free. Defense counsel failed to even check with this client as to his wish to appeal. . . .
> He failed to secure his client's interests in the negotiation and implementation of the plea agreement with the government and in obtaining the benefits due his client as per that agreement. . . .
> Petitioner [sic] was informed and assured by his defense counsel that he would be receiving a one third (1/3) deduction off his calculated guidelines range. However, at the sentencing stage of the proceedings the government changed their minds after the fact. In other words[,] changed their agreement and reduced the amount of time that the defendant would be having deducted from his presumptive sentence and in reality, [e]nhanced, the defendant's sentence. The defense counsel failed at this time to energetically argue in his client's favor and cooperated with the government, in reality, to deny his client from a deserved benefit that []he had earned through several debreifings.
> Most of the damage that the counsel's ineffective assistance caused occurred after the counsel had arrived at an agreement with the government.
> Petitioner [sic] herein concedes that the defense counsel had reached an understanding with the government pertaining to the appealing and collateral attack, however, the same defense counsel's ineffective assistance and failure to act as a "counsel," made the proceedings and any agreements that were produced as a result of the ineffectiveness of counsel, unconstitutional.

Def.'s Mot. at 7-9. From this excerpt, it is apparent that Movant intertwines claims that his counsel was ineffective at sentencing with claims that his counsel was ineffective at all stages of the proceedings, including the negotiation of the plea agreement. Thus, the Court must determine which purpose dominates. Statements pertaining to, or at least encompassing, ineffective assistance with respect to the waiver of the right to appeal or seek collateral relief include: (1) "defense counsel in

this case failed to properly defend his interests at every stage of the criminal proceedings;" (2) "[f]rom the arraignment and preliminary hearings the defense counsel was intent on making this Petitioner plead guilty and accept the responsibility that was not his;" (3) "[d]efense counsel failed to even check with this client as to his wish to appeal . . .;" and (4) "failed to secure his client's interests in the negotiation and implementation of the plea agreement with the government and in obtaining the benefits due his client as per that agreement." Defs.' Mot. at 7-9.

In contrast to these statements, Movant makes the following statements pertaining to his counsel's ineffective performance at sentencing: (1) "defense counsel was ineffective at sentencing in that he never argued for any leniency or objected to his client being saddled with the full responsibility;" (2) "defense counsel [assured Movant] that he would be receiving a one third (1/3) deduction off his calculated guidelines range[; h]owever, at the sentencing stage of the proceedings the government changed their minds after the fact. . . [, and t]he defense counsel failed at this time to energetically argue in his client's favor;" and (3) "[m]ost of the damage that the counsel's ineffective assistance caused occurred after the counsel had arrived at an agreement with the government." *Id.*

The statements regarding defense counsel's performance as to waiver are relatively vague compared to the statements regarding performance at sentencing. For example, simply alleging that defense counsel did not properly defend Movant's interests at "every stage in the criminal proceedings" is not enough to cast doubt on Movant's waiver because it is not factually supported, and indeed, is contradicted by the sentencing transcript of record. Similarly, Salazar's statement that defense counsel was "intent on making him plead guilty," without any attendant allegation that Salazar told his counsel that he did not wish to plead guilty, or that he did not understand that he was

waiving his right to appeal or collaterally attack his conviction or sentence, gives this Court doubt as to the credibility of Salazar's assertion. The only specific allegation calling into question the knowing and voluntary nature of Movant's waiver is the statement that Movant's counsel did not ask Movant as to his wish to appeal. The Court, however, did ask Movant as to his wish to appeal during the rearraignment, to which Movant replied that he wished to waive that right. *See* Rearr. Hrg. Tr. at 15 (Cr. DE 116).

Against these facts, the Court must weigh, as the Fifth Circuit did in *White*, Movant's other specific allegations that defense counsel was ineffective at sentencing. Movant first claims that his counsel did not argue for leniency or object to him being saddled with full responsibility. In addition, Movant argues he was harmed by his counsel by his failure to obtain a one-third (1/3) deduction off his calculated guideline range, which by the terms of the plea agreement, the government was under no obligation to offer. Finally, the Court considers the weight of Movant's statement that "most of the damage that the counsel's ineffective assistance caused occurred **after the counsel had arrived at an agreement with the government**." Defs.' Mot. at 8 (emphasis added).

Although the mixed nature of Movant's statements present this Court with a close case, the Court finds that, on the whole, the driving force behind Movant's ineffective assistance claim is that his counsel did not obtain for him the same one-third (1/3) deduction that his co-defendants received. As such, the Court understands Movant's primary complaint on this collateral attack to be that he received ineffective assistance of counsel at his sentencing hearing, not his plea. Movant knowingly and voluntarily waived the right to make this claim. *See Wilkes*, 20 F.3d at 653. The Court refuses to render Salazar's waiver meaningless by permitting this claim to go forward. Consequently,

Movant's 2255 Motion (Cv. DE 1) is hereby DISMISSED as waived WITH PREJUDICE.

### B.　　Ineffective Assistance of Counsel

Even assuming Salazar's ineffective assistance of counsel claim survives the waiver, the Court finds that such claim is meritless based on the record of proceedings below. It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The standard governing ineffective assistance claims was established by the Supreme Court in *Strickland*: a habeas petitioner (or a 2255 movant) claiming ineffective assistance must show (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that he suffered prejudice as a result. *Id.* at 687. Since a reviewing court may address these prongs in either order, *id.* at 697, to the extent that doing so facilitates efficient disposal of Salazar's claims, the Court will focus primarily on whether Salazar, based on the record and allegations as they currently stand, is precluded from demonstrating prejudice.

Salazar asserts in his 2255 Motion that his counsel rendered ineffective assistance by (1) "failing to file written objections to the Pre-Sentence Report," (2) letting the adversarial relationship between defense counsel and prosecutor "lapse into a cooperative process," and (3) failing to argue for any lenience or to object to his client being "saddled with the full responsibility of the charged [o]ffense while others got away scott free." Def.'s Mot. at 4-7. The Court will address each of these claims in turn.

As to his counsel's failure to object to the PSR, Salazar cannot show any prejudice because he does not cite any portion of the PSR counsel should have objected to, nor claim any of the facts or statements included in the PSR are incorrect or even misleading. *See Strickland*, 466 U.S. at 687.

At the sentencing hearing, the Court asked Salazar whether he had reviewed the PSR with his attorney, and Salazar replied that he had. *See* Sent. Hrg. Tr. at 23. At that time, Salazar's counsel orally reiterated his written notice of no objection to the PSR, and informed the Court that their objection would be limited to the government's § 5K1.1 motion. *See id.* Whether the PSR was entirely correct, thus warranting no objection, or whether Salazar's counsel reasonably determined that the better course was to limit its objection's to the government's § 5K1.1 motion, Salazar alleges no facts sufficient to show that he was prejudiced by his counsel's actions. *See Strickland*, 466 U.S. at 687; *see also United States v. Alvarez*, No. 94-20105, 1995 WL 337678, at *3 (5th Cir. May 17, 1995).

As to defense counsel's cooperative relationship with the government, the Court reviewed the transcript of Salazar's July 24, 2007 sentencing hearing, and found that Salazar's counsel *did* object to the government's offer of a one-quarter sentencing deduction, rather than a one-third. Specifically, Salazar's counsel stated:

> Mr. Salazar falls into that dubious position of the least knowledgeable gets the least beneficial agreement with the government, and that's why we're asking for one-third. . . . [Salazar] did debrief. He gave all the information he knows. He knows none of the people involved in this organization. All he dealt with was [two of his three co-defendants]; and as a result, now he's getting less of a deduction from his sentence because of the fact that he's the least culpable party. So we're asking that it at least be put on par with everyone else involved in this situation and he get one-third off.

Sent. Hrg. Tr. at 24-26 (Cr. DE 117). This record clearly shows Salazar's defense counsel representing his client's interest in a position adverse to the government. Accordingly, the Court finds that Salazar's counsel did not prejudice him by lapsing into an inappropriately cooperative relationship with the government, and certainly did not render the result of the proceedings unreliable. *See Strickland*, 466 U.S. at 687 (noting that the constitution recognizes only those

"breakdown[s] in the adversarial process that render[] the result unreliable"). Furthermore, his counsel's effectiveness is demonstrated by the fact that he was awarded safety valve plus a one-quarter (1/4) deduction despite the government's conclusion that Salazar was not being completely truthful in his debriefing.

For the same reasons, the record does not support a finding that Salazar's counsel "never argued for any leniency or objected to his client being saddled with the full responsibility of the charged [o]ffense while others got away scott free." The record clearly shows Salazar's counsel argued for a greater downward departure under § 5K1.1 than the government offered. *See* Sent. Hrg. Tr. at 24-26. That the Court rejected counsel's argument does not render his assistance ineffective. To the contrary, Salazar received several deductions from his sentence, including points for acceptance of responsibility and safety valve, in addition to the § 5K1.1 downward departure. Moreover, Salazar was not "saddled with full responsibility" – his three cohorts were likewise convicted and sentenced to similar terms of imprisonment and supervised release.

### III. CONCLUSION

In light of the foregoing, Salazar's Motion to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255 (Cv. DE 1) is DISMISSED WITH PREJUDICE as waived, and in the alternative, on the merits. The government's Motion to Dismiss (Cv. DE 17) same is GRANTED. Further, this Court finds no reason to grant a certificate of appealability and hereby DENIES the same.

SIGNED this 17th day of April, 2009.

Andrew S. Hanen
United States District Judge